OPINION OF THE COURT
Mary H. Smith, J.
The defendant, Raffaele Abbate, also known as Robert Ab-bate, has been indicted for grand larceny in the second degree, burglary in the third degree and criminal possession of stolen property in the second degree, allegedly committed in the Town of Cortlandt on or about and between July 29, 1997 through August 1, 1997. The defendant now moves and the motion is disposed of as follows:
I. and II. motion to inspect/dismiss/reduce indictment
The determination of this motion requires an analysis of the testimony given to the Grand Jury and the People’s theory of this case. According to the evidence presented, the defendant and his wife had purchased a house as tenants by the entirety at 2 Harrison Court in the Town of Cortlandt. Prior to the incidents that led to the instant indictment, the defendant ap *925 parently had executed a quitclaim deed in his wife’s favor, leaving her as the sole holder of legal title to the property.[1]
The defendant and his wife were unable to keep up the mortgage payments on the house. In addition, their relationship had grown strained and they began divorce proceedings. Supreme Court issued an order of foreclosure on the house, appointed a Referee and scheduled an auction sale for the premises to be held on July 29,1997. Some months prior to the auction the defendant and his wife moved out of the house, the defendant taking up residence in the Town of Montrose.[2]
The defendant was present for the foreclosure auction sale. He announced to the assembled group of potential bidders that he was the owner of the house, that he intended to move back into it, and that he “wanted to warn them of that so that there was no problem afterward as to what they were getting into.” The sale proceeded nonetheless; the house was sold to a bidder who provided the requisite deposit in certified funds; and a closing date was arranged for the transfer of legal title to the new owner.
Shortly after the auction but before the passing of title, the defendant rented a large truck and drove it into the driveway of the house. A passing neighbor saw him proceed to hide the license plates and signs on the truck with brown wrapping paper. The defendant then set to work removing the furnace, central air-conditioning units, ductwork, kitchen cabinets (with their granite countertops), toilets, light fixtures, even the flagstones from the patio and walkway — in short, everything in the house including the “kitchen sink”. Expert estimates of the cost of replacement of these items averaged about $140,000.
The defendant was stopped by police, who questioned him about his appropriation of this property. It was his contention that the items in question were his by “equitable distribution”. He was subsequently arrested and ultimately indicted for grand larceny in the second degree, burglary in the third degree and criminal possession of stolen property in the second degree.
The defendant now moves in his omnibus motion for dismissal of the indictment, claiming that the evidence before the *926 Grand Jury was insufficient under a number of factual and legal theories grounded upon such diverse bases as the Real Property Actions and Proceedings Law and the Domestic Relations Law. In order to address these claims, the court will review (under the standards applicable for Grand Jury proceedings) the elements of each of the offenses charged and the proof submitted to show reasonable cause to believe that the defendant committed them. Beginning with the crime of burglary in the third degree, the essential elements of this offense are (1) an unlawful entry into a building; (2) the actor’s knowledge that the entry is unlawful; and (3) the intent to commit a crime in the building. These elements will be examined seriatim:
The evidence before the Grand Jury was sufficient to demonstrate that the defendant’s entry was unlawful for a variety of reasons. He did not hold title to the premises immediately prior to the auction sale, having placed sole legal title in his wife. The Grand Jury learned that she had not given him permission to enter the house or to take any of its fixtures. Additionally, as the house was under an order of foreclosure, the defendant (as a defendant in the foreclosure action) was judicially barred from possession of the premises and fixtures.[3] Pivotally, since the defendant had moved out of the premises prior to the auction sale, his reentry subsequent to the sale was unlawful absent the permission of the purchaser (see, Wagman v Smith, 161 AD2d 704). In short, the proof of his having relinquished possession of the premises prior to the auction sale, coupled with proof of lack of permission from the purchaser at that sale as well as lack of permission from the titleholder of record (his wife), was sufficient to demonstrate that the defendant’s entry was unlawful. The element of the defendant’s culpable mental state of knowledge that the entry was unlawful was satisfied by proof that the defendant was physically present during the auction sale, at which he learned that another individual had purchased the house. In addition, evidence that the defendant had concealed the license plates and signs on the truck he used to empty the house clearly suggests knowledge on his part that his entry was unlawful. While evidence of such "consciousness of guilt” is considered weak ev *927 idence (though nonetheless relevant and admissible) under the criminal trial standard of proof beyond a reasonable doubt (People v Leyra, 1 NY2d 199, 209; see, Prince, Richardson on Evidence § 4-611 [Farrell 11th ed]), it is clearly enough to satisfy the Grand Jury standard of reasonable cause.
The final element of the crime of third degree burglary is the intent to commit a crime, which must exist at the time of the unlawful entry (People v Gaines, 74 NY2d 358). Here the defendant’s intent to commit larceny may plainly be inferred from his furtive conduct in attempting to conceal the identity of the rented truck. In addition, the defendant’s threatening statements made earlier at the auction sale are probative of criminal intent harbored at the time of his entry onto the premises.
Of course, central to the analysis of the sufficiency of the evidence of all the crimes charged in the indictment is the question of whether the defendant’s taking property from the house was in fact a larceny. The trespassory taking of property and the value of that property constitute the elements of the grand larceny count, and the knowing possession of stolen property (together with proof of value) make up the stolen property count. It is on the central issue to all three charges, i.e., whether the taking constituted a larceny, that the defendant resorts to his interpretation of the Domestic Relations Law and RPAPL for the proposition that he was entitled to possession of the fixtures of the house and therefore that the evidence before the Grand Jury was insufficient to support any of the counts of the indictment. The problem with the defendant’s approach is that in searching for legal reasons to justify his conduct, he overlooks the plain language of the Penal Law upon which this entire prosecution is grounded.
Penal Law § 155.00 (5) defines an “owner” of property as “any person who has a right to possession thereof superior to that of the taker, obtainer or withholder.” The Court of Appeals has taken this language to mean that to be an “owner” of property one need not have “an independent right of possession but only * * * a possessory right which, however limited or contingent, was superior to that of defendant” (People v Hutchinson, 56 NY2d 868, 869 [emphasis added]). At the moment the Referee signaled that the bidding was closed, the high bidder at the auction had at the very least a contingent interest in the premises in question. That bidder enjoyed the absolute right to fee simple title to the house upon full payment of the purchase price. Tender of that payment was the *928 only condition limiting this absolute right of possession. The defendant, having earlier quit the premises, had no possessory rights whatsoever. The purchaser at auction was thus an “owner” under Penal Law § 155.00 (5) with a superior right of possession to that of the defendant, however executory, conditional or inchoate the right of the purchaser may have been at the moment of the defendant’s entry onto the premises.[4]
The defendant further claims that he enjoyed a possessory interest in the house as marital property under section 236 of the Domestic Relations Law. This contention needs no extended discussion. Since the Domestic Relations Law deals with property rights between spouses, before a particular piece of property can be considered marital property there must be some showing that at least one of the spouses has a possessory right to the property in question. As discussed supra, the auction purchaser enjoyed a superior right of possession to that of the defendant, who had no possessory rights in the house at all. By the same reasoning, the purchaser’s rights were superior to the (then nonexistent) rights of the defendant’s wife subsequent to the auction. As a result, whatever the defendant and his wife owned as marital property, this house was not a part of it at the times relevant to this case, and the Domestic Relations Law cannot cause something to become marital property that was not at the time the property of either or both spouses.
The only remaining “loose thread” lies with the element of the value of the property stolen. The defendant contends that much of the property he took consisted of his own personal possessions. In the Grand Jury, the testimony as to value was limited to the market value of specific fixtures stolen from the house, none of which could even arguably have been considered *929 personalty. As noted supra, these fixtures consisted of such diverse items as central air-conditioning units, ductwork, kitchen cabinets, countertops, toilet bowls and the like. None of the items considered in the value computation remotely approached the status of personal possessions. Since the total amount involved is $140,000, there is little question as to the sufficiency of evidence to support the second degree grand larceny and stolen property charges.
Finally, this court holds that the instant indictment is not subject to dismissal for any conduct that impaired the integrity of the Grand Jury, nor is there cause to release any portion of the minutes of the proceedings to the defense.
III. MOTION FOR DISCOVERY AND INSPECTION
This application is granted to the limited extent of ordering that the People are to provide the defendant with materials and information, the disclosure of which is required pursuant to the provisions of CPL 240.20, 240.44 and 240.45. Further, in order to facilitate the conduct of the proceedings to which the disclosure mandated by CPL 240.44 and 240.45 is relevant, the People are directed to effect such disclosure at least two days prior to the scheduled commencement of pretrial hearings and trial, respectively. As to the defendant’s demand for exculpatory material, the People are reminded of their obligation to disclose any such material immediately upon its discovery. Where a question exists as to whether any particular material is exculpatory, the People are urged to turn such matter over to the court for its in camera inspection to resolve the issue.
The application is otherwise denied as it seeks items or information which are beyond the scope of discovery and the defendant has failed to show that such items are material to the preparation of his defense (CPL 240.40 [1] [a], [c]).
IV. MOTION FOR BILL OF PARTICULARS
This application is denied as moot, as the defendant was provided with an adequate bill of particulars.
V. (a) MOTION TO SUPPRESS PHYSICAL EVIDENCE
This application is granted to the limited extent that a Mapp hearing will be conducted immediately prior to trial to determine whether physical evidence that the People intend to introduce at trial was lawfully seized by the police.
*930 (b) MOTION TO SUPPRESS STATEMENTS
This application is granted to the extent that the court will conduct a hearing prior to trial concerning any noticed statements allegedly made by the defendant, for the purpose of determining whether any of these statements were involuntarily made by the defendant within the meaning of CPL 60.45 (CPL 710.20 [3]; 710.60 [3] [b]; People v Weaver, 49 NY2d 1012).
VI. MOTION FOR SANDOVAL HEARING AND MOTION FOR DISCLOSURE OF UNCHARGED BAD ACTS
These applications are granted in their entirety. The hearings shall be consolidated and conducted immediately prior to trial, at which proceeding the defendant has the burden of informing the court of whatever evidence of his prior conduct he seeks preclusion of (People v Matthews, 68 NY2d 118; People v Malphurs, 111 AD2d 266). In order to facilitate the conduct of these hearings, the People are hereby directed to provide the defendant with the notification mandated pursuant to CPL 240.43 upon their commencement.

. While the Grand Jury did not hear the details of the defendant’s having executed the quitclaim deed (this fact having been supplied in the parties’ motion papers), there was evidence adduced showing that the wife held exclusive title to the premises.

. The Grand Jury heard testimony that the defendant had informed the Department of Motor Vehicles of his change of address, and had his driver’s license amended to reflect his new place of residence.

. Curiously, the People chose not to introduce the order of foreclosure issued by Supreme Court (Silverman, J., Mar. 24, 1997) which specifically barred the defendant from any “right, claim, lien, title [and] interest in said mortgaged premises and each and every part thereof.” This order, with proof of service upon the defendant, would in and of itself have been sufficient proof that his entry onto the premises and taking property from the house were unlawful.

. This court need not decide the issue of whether the analysis would be different had the evidence before the Grand Jury shown that the defendant (or his wife) was still in possession of the house at the time of the auction sale. Penal Law § 155.00 (5) also states, “In the absence of a specific agreement to the contrary, a person in lawful possession of property shall be deemed to have a right of possession superior to that of a person having only a security interest therein, even if legal title lies with the holder of the security interest pursuant to a conditional sale contract or other security agreement.” Had the proof indicated that the defendant or his wife had maintained possession of the house up to and including the time at which he removed its fixtures, this might have been an entirely different situation (see, e.g., Wagman v Smith, supra). Since the evidence clearly showed the contrary, i.e., that the defendant and his wife had relinquished all possession of the premises by having permanently relocated elsewhere and by having allowed the utilities to have been cut off, he was not in lawful possession when he returned to strip the house of its fixtures.